UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-22900-CIV-ALTONAGA/Simonton

R+C+G STATION, INC.,

    Plaintiff,

vs.

URBIETA OIL, INC.,

    Defendant.
_____/

**ORDER**

**THIS CAUSE** comes before the Court on Defendant, Urbieta Oil, Inc.'s ("Defendant[']s]" or "Urbieta[']s]") Motion to Dismiss . . . ("Motion") [ECF No. 98], filed on May 7, 2012. Plaintiffs, Ramon Castillo ("Castillo") and R+C+G Station, Inc. ("RCG") (collectively, "Plaintiffs"), filed an initial complaint [ECF No. 1] on August 10, 2010, alleging violations of the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, *et seq.* ("PMPA") and unjust enrichment. The Court granted Defendant's motion to dismiss that complaint. (*See* Jan. 27, 2012 Order [ECF No. 52]). Plaintiffs thereafter amended their pleadings twice. In the Second Amended Complaint ("Complaint") [ECF No. 96] filed on April 26, 2012, Plaintiffs allege five claims: violations of the PMPA (Count I); violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA") (Count II); theft pursuant to Fla. Stat. § 722, *et seq.* (Count III); unjust enrichment (Count IV); and breach of contract (Count V). Defendant seeks to dismiss all five claims against it pursuant to Federal Rules of Civil Procedure ("Federal Rule[s]") 12(b)(1) and 12(b)(6). (*See* Mot. 1). Plaintiffs filed a Response [ECF No. 100] to the Motion on May 15, 2012, to which Defendant never timely

replied. The Court has carefully considered the Motion, the parties' written submissions, and the applicable law.

## I.   BACKGROUND[1]

Plaintiff Castillo is the remaining director and trustee of the assets of Plaintiff RCG, a dissolved Florida corporation that formerly did business in North Miami, Florida. (*See* Compl. ¶ 3). RCG is a former operator of a Valero gasoline service station and convenience store. (*See id.*). Defendant Urbieta is a Florida corporation and Valero-branded distributor of petroleum products, with a principal place of business in Miami, Florida. (*See id.* ¶ 4). On August 1, 2008, the parties executed a three-year contract entitled the "Contractor Operated Retail Outlet Agreement" ("Agreement"), in which Plaintiffs are identified as the "Operator" and Defendant as the "Company." (*Id.* ¶ 5). Under the Agreement the Operator acted as warehouseman for Company petroleum products, and as cashier and short-term repository for Company funds from the sales of these products. (*See id.* ¶ 12).

Under the Agreement the Operator's "[c]ompensation rate is expected to cover all of the Operator's reasonable, necessary, and efficient expenses in performing the duties under this Agreement." (*Id.* ¶ 24). The Operator's compensation rate was $0.04 per gallon of gasoline sold for the first sixty days of the Term and $0.03 per gallon of gasoline sold thereafter. (*See id.* ¶ 25). The Operator's monthly earned income from the Company's compensation rate could vary significantly from month to month, at times as much as 13.5%, depending on the volume of gasoline sold. (*See id.* ¶ 26).

---

[1] The facts are taken from the Complaint. The Court notes that the Complaint by and large repeats, at length, numerous provisions from the parties' agreement that are not wholly relevant here. The Court omits many of these allegations, particularly since the Court's January 27, 2012 Order examined the same agreement in some detail.

On December 9, 2009, there was a fire. (*See id.* ¶ 52).[2] A fire damage claim was filed with Plaintiffs' insurance carrier on December 9, 2009. (*See id.* ¶ 42). Defendant received $32,067.00 as payment under Plaintiffs' property damage policy and subsequently refused to pay Plaintiffs their earned commissions for the months of January and February 2010, stating that these amounts were necessary to recoup the deductible under the policy. (*See id.*). Defendant refused to reimburse Plaintiffs for their losses from the fire. (*See id.*). Plaintiffs experienced over $30,000.00 in inventory losses as a result of the fire. (*See id.* ¶ 52). Defendant's losses were minimal. (*See id.* ¶ 53). Defendant also refused to return any portion of Plaintiffs' Renewal Transfer Fee or Down Payment, causing the Plaintiffs financial harm. (*See id.* ¶ 30).

On July 6, 2010, without notice to Plaintiffs, Defendant's representatives arrived at the Location and advised Plaintiffs that the Agreement was terminated and that the Location was closed. (*See id.* ¶ 27). Defendant's representatives removed the Company's products from the Location, changed the locks, and ejected Plaintiffs. (*See id.*). The Company refused Plaintiffs' demands to re-open the Location under the Agreement. (*See id.* ¶ 28). The Company further refused to renew the Agreement. (*See id.* ¶ 29).

The Company wrote to the Operator on December 8, 2010 stating "No [c]omission for Jan 2010, and Feb 2010 due to paying the deductible for the insurance of the fire on December 2009 which was said" [sic]. (*Id.* ¶ 21).

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), "[t]o survive a motion to dismiss, a

---

[2] The Court has done its best to deduce the actual *facts* of this case as alleged in the Complaint, apart from the mere recitation of the Agreement's provisions — no easy task. Toward the end of the Complaint there suddenly appear passing references to "the December 9th 2009 fire" (Compl. ¶¶ 52, 53). It appears that this action ultimately arises out of that fire, yet there is no explanation of where the fire was, or what specifically occurred. There are merely a few additional cryptic references to this event, and the Court attempts to set these forth in chronological order.

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). But pleadings that "are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950; *see also Sinaltrainal*, 578 F.3d at 1260 ("[U]nwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.") (quotation marks and citation omitted).

A defendant may attack subject matter jurisdiction under Rule 12(b)(1) in two ways — a facial attack or a factual attack. A factual attack "challenges the existence of subject matter

jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings such as testimony and affidavits, are considered." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). In a factual attack, courts are free to weigh the evidence to satisfy themselves they have the power to hear the case. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). No presumption of truth attaches to the plaintiff's allegations, and the existence of disputed material facts does not prevent the trial court from evaluating for itself the merits of the jurisdictional claim. *See id.*

In a Rule 12(b)(1) facial attack, the court may only consider the allegations in the complaint, which must be taken as true. *See Lawrence*, 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511). A facial attack asserts that a plaintiff has failed to allege a basis for subject matter jurisdiction in the complaint. *See Menchaca*, 613 F.2d at 511. In a facial attack, the plaintiff's allegations are taken as true for the purposes of the motion, *see id.*, and the plaintiff is afforded safeguards similar to those provided in challenging a Rule 12(b)(6) motion. *See Lawrence*, 919 F.2d at 1529 (citing *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir. 1981)).

### III.   ANALYSIS

In its Motion, Defendant seeks to dismiss all claims. Defendant moves to dismiss Counts I and III pursuant to Rule 12(b)(6) for failing to state claims. Should the Court find Count I fails to state a valid claim, Defendant also moves to dismiss Counts II–V for lack of subject-matter jurisdiction under Rule 12(b)(1). The Court addresses each argument in turn.

**A.    Count I — Violations of the PMPA**

In Count I of the Complaint, Plaintiffs bring a claim for violations of the PMPA. The PMPA "limits the circumstances in which franchisors may 'terminate' a service-station franchise or 'fail to renew' a franchise relationship." *Mac's Shell Serv., Inc. v. Shell Oil Prods. Co. LLC*,

130 S.Ct. 1251, 1252–53 (2010) (quoting 15 U.S.C. §§ 2802, 2804). Plaintiffs allege that the PMPA governed their relationship with Defendant, and that Defendant failed to follow notice requirements under the PMPA before terminating or failing to renew the franchise relationship between the parties. (*See* Compl. ¶¶ 35–36).

Defendant asserts that Plaintiffs have not sufficiently alleged their status as a franchisee under the PMPA, and that the statute therefore does not apply to the parties' relationship. (*See* Mot. 4 (citing *Farm Stores, Inc. v. Texaco, Inc.*, 763 F.2d 1335, 1340 (11th Cir. 1985))). The Eleventh Circuit in *Farm Stores* explained, "Congress intended the PMPA to apply only to the franchise relationship between a 'refiner,' 'distributor,' or 'retailer' of motor fuels under a brand name. Unless the parties meet the statutory definition of one of these terms, there is no coverage under the PMPA and general contractual principles govern." 763 F.2d at 1339–40. Under the PMPA, a "franchisee" is a "retailer or distributor" authorized to use a trademark in connection with sale, consignment, or distribution of motor fuel. 15 U.S.C. § 2801(4). A "retailer" is "any person who purchases motor fuel for sale to the general public for ultimate consumption," *id.* § 2801(7), while a "distributor" is "any person . . . who — (A) purchases motor fuel for sale, consignment, or distribution to another; or (B) receives motor fuel on consignment for consignment or distribution to his own motor fuel accounts or to accounts of his supplier," *id.* § 2801(6).

The parties have previously litigated the issue of whether Plaintiffs constitute a franchisee under the PMPA, which issue the Court addressed in its January 27, 2012 Order. RCG alleged in its original complaint that it was a franchisee without any supporting factual allegations, and Defendant moved to dismiss for failure to state a claim on the ground that the Agreement, attached to that complaint, expressly contradicted RCG's conclusory allegations. (*See* Jan. 27,

2012 Order 2). The Court agreed with Defendant, finding in the first place that the Agreement expressly disclaimed the existence of a PMPA franchise relationship between the parties, although this fact alone was not dispositive. (*See id.*). In addition, the Court found that Section 5.1 of the Agreement belied a conclusion that RCG was a franchisee (retailer or distributor), as the Agreement established "RCG was merely responsible for receiving the fuel and acting as a cashier in connection with the sale of the motor fuel. RCG did not purchase the gasoline," and Urbieta retained the title to the gasoline until it was sold to retail consumers. (*Id.* 3). Therefore, by the terms of the Agreement RCG was not a "retailer" or "distributor" under the PMPA. (*Id.* (citing *Farm Stores*, 763 F.2d at 1340)). The Court thus granted Defendant's motion to dismiss and permitted RCG to amend its pleading. (*See id.* 4).

Given the Court's previous ruling, Plaintiffs must demonstrate they are subject to the PMPA as a franchisee *notwithstanding* the express terms of the Agreement. In the Complaint, Plaintiffs allege they are subject to the PMPA "because Plaintiffs were not an employee of the Defendant under the parties' Agreement, but rather an independent contractor and constructive retailer of petroleum products of the type identified in *Hardwick v. Nu-Way Oil Co., Inc.*, 589 F.2d 806 (5th Cir. 1979), and one who bore significant economic risks typical of a motor fuel entrepreneur of the type identified in [*Farm Stores*]." (Compl. ¶ 32). Plaintiffs state they "make no attempt to classify themselves as a 'retailer' by PMPA definition," but bring this action as a "constructive retailer," pursuant to *Farm Stores*. (Resp. 2). They note that the Agreement characterizes the parties' relationship as that of an independent contractor, which according to Plaintiffs supports the contention that Plaintiffs are "the type of retailer Congress sought to protect with the PMPA." (*Id.* 3).

Therefore, Plaintiffs contend that in spite of the Agreement's provisions, RCG was a

"constructive retailer" under the PMPA. The factual allegations Plaintiffs provide in support of this contention are various "indicia of [Plaintiffs'] entrepreneurship" (Compl. ¶ 33), and "indicia of economic risk" assumed by Plaintiffs as "an independent motor fuel entrepreneur" (*id.* ¶ 34). However, these allegations are only relevant to the extent Plaintiffs' independent contractor status is relevant to the inquiry of whether Plaintiffs were a retailer under the PMPA.

Plaintiffs' newfound reliance on *Farm Stores* and *Hardwick* in the present Complaint, and the indicia of entrepreneurship and economic risk, do not justify a different outcome than the one reached in the January 27, 2012 Order. Although Plaintiffs allege facts regarding the independence of their operations, under *Farm Stores* and *Hardwick* these facts hardly convert the parties' relationship into a PMPA franchise, particularly in light of the Court's unmistakable findings regarding the Agreement in the January 27, 2012 Order.

The *Farm Stores* decision makes clear that the fundamental inquiry into franchisee status under the PMPA is whether an entity purchased gasoline from the franchisor. *See* 763 F.2d at 1342. In fact, the district court below had examined certain "indicia of independence" of the operator, but the Eleventh Circuit found the district court erred in doing so "because [the district court] did not adhere to the clear language of the PMPA." *Id.* at 1343. The Eleventh Circuit explained that it was error to begin with "indicia of entrepreneurial responsibility and risk" characteristic of "independent dealers and businessmen," to reach a conclusion that an entity is a "constructive retailer under the PMPA" even though that entity does not meet the statutory definition. *Id.* The court emphasized that "the PMPA was not intended to protect every 'independent businessman' engaged in the marketing of motor fuel," and that such a businessman must still meet the statutory definitions of the PMPA to be protected by that statute. *Id.*

The court in *Farm Stores* also extensively discussed the *Hardwick* decision as it relates to PMPA claims. The Eleventh Circuit found that while *Hardwick* is a "leading case analyzing independent business responsibility," *id.* at 1344, "[if] independence is the test, it must be independence with respect to the sale of motor fuel," *id.* at 1345. Thus, while the court did examine signs of a fuel dealer's independence and whether the dealer bore the market risk of gasoline sales or losses, it is clear such elements of compensation and risk structure are only relevant to the extent they illuminate whether the dealer effectively purchased gasoline for purposes of the PMPA. The Eleventh Circuit consistently used the language of the PMPA as its guidepost for any analysis of the independence of a purported franchisee.

Therefore, *Farm Stores* and *Hardwick* do not excuse Plaintiffs from having to demonstrate their compliance with the PMPA language as a retailer, which requires a showing that they purchased gasoline from Defendant. To that end, the "indicia of entrepreneurship" (Compl. ¶ 33) and "indicia of economic risk" (*id.* ¶ 34) in the Complaint are not dispositive, in that they do not relate to Plaintiffs' actual *purchase* of gasoline, as is necessary to be a PMPA retailer. Plaintiffs include some allegations in the Complaint connected to the *sale* of gasoline. For example, Plaintiffs aver they "were not compensated by the Defendant with a weekly salary, but instead had their compensation tied directly to the sales of gasoline," in the form of a set commission of a fixed amount per gallon sold. (Compl. ¶ 33(h), 34(c)). However, this compensation rate is set forth in Section 7.1 of the Agreement itself, which the Court already examined in the January 27, 2012 Order and found not to establish a franchise relationship. Plaintiffs have not provided any reason to revisit that finding here. In any event, however, the allegation that Plaintiffs received a set commission per gallon of gasoline sold actually tends to weigh against construing the parties' relationship as that of a franchise. *See Karak v. Bursaw Oil*

*Corp.*, 147 F. Supp. 2d 9, 14 (D. Mass. 2001) (finding service station operator did not assume substantial market risk characteristic of PMPA franchisee where, *inter alia*, it collected a $0.09 per gallon commission regardless of retail price of fuel).

Plaintiffs have not alleged any facts in the Complaint to overcome the Court's January 27, 2012 finding, based on the terms of the Agreement, that Plaintiffs are not covered by the PMPA. As a result, and in light of Plaintiffs' own admission that they do not meet the statutory standard (*see* Resp. 2), Count I must fail.[3]

### B. Counts II–V — Claims Asserted Under State Law

Defendant contends that the Court should decline jurisdiction over the remaining Counts II through V, which are asserted under state law.[4] Plaintiffs acknowledge that the basis of the Court's jurisdiction over these state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). (*See* Resp. 9). Pursuant to 28 U.S.C. section 1367 ("section 1367"), a district court may exercise supplemental jurisdiction over "all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The district court, however, may decline supplemental jurisdiction over a state law claim if:

> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, [or]
>
> (3) the district court has dismissed all claims over which it has original jurisdiction . . .

---

[3] The Court accordingly does not address Defendant's argument that even if Plaintiffs meet the requirements of the PMPA, they failed to file the present action within the statute of limitations.

[4] Although Defendant invokes Federal Rule 12(b)(1) as the basis for dismissal, the Court finds 28 U.S.C. section 1367(c) to be the appropriate vehicle.

*Id.* § 1367(c)(2)–(3). As the Court dismisses Count I, the sole claim over which it asserts original jurisdiction, it is appropriate to dismiss the remaining claims in this action, all asserted under state law. Accordingly, Counts II through V are also dismissed.

**C.     Attorney's Fees**

Finally, Defendant requests attorney's fees pursuant to the PMPA, which provides that in a civil PMPA action, "the court may, in its discretion, direct that reasonable attorney and expert witness fees be paid by the franchisee if the court finds that such action is frivolous." 15 U.S.C. § 2805(d)(3).[5]

The Court finds, indeed, that the PMPA claim asserted in the Complaint, in light of the Court's previous Order, is frivolous. The January 27, 2012 Order unmistakably set forth the reasons why the parties' Agreement did not establish a franchise relationship. While the Court provided Plaintiffs an opportunity to amend the pleadings, this should not have been construed as an opportunity to repeat, at length, provisions of that same Agreement back to the Court. The references to *Farm Stores* and *Hardwick* hardly helped matters and were essentially frivolous, as neither case particularly favored Plaintiffs' position. The Court finds Plaintiffs' decision to reassert a fundamentally unavailing claim has occasioned a misuse of the parties' resources as well as those of the Court, and has unnecessarily prolonged this litigation. The PMPA provides for the award of attorney's fees in such a case. Accordingly, the Court grants Defendant the fees incurred in briefing the present Motion.

---

[5] Defendant also seeks fees pursuant to Florida Statute section 772.11(1), providing that "[t]he defendant is entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim that was without substantial fact or legal support." However, the context of this provision makes clear that the "claim" must be one of the specifically enumerated crimes on a list that does not include violations of the PMPA.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 98]** is **GRANTED**. The Clerk of Court is instructed to **CLOSE** this case, and any pending motions are **DENIED as moot**. Upon receiving from Defendant an accounting of the attorney's fees Defendant incurred in briefing the Motion, Plaintiffs shall tender same to Defendant within thirty (30) days.

**DONE AND ORDERED** in Miami, Florida, this 7th day of June, 2012.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc: counsel of record